A92A1165. HURSTON v. THE STATE.
(426 SE2d 196)

SOGNIER, Chief Judge.

Kenneth Hurston was indicted for murder and aggravated assault. His first trial ended in a mistrial in 1988 after the jury was unable to reach a verdict. Hurston was retried in 1990 and acquitted of murder and convicted of aggravated assault. He now appeals from the denial of his motion for new trial.

1. Appellant first contends that his plea in bar based on a claim of double jeopardy filed before the second trial should have been granted. Specifically, appellant maintains the mistrial should not have been entered in the absence of manifest necessity, and thus he was twice placed in jeopardy in violation of the federal and state constitutions.

Our review of the transcript of the first trial and the evidence adduced at the hearing on the plea in bar reveals that after two-and-one-half days of testimony, the jurors in the first trial deliberated twelve hours over two days, keeping the bailiff informed of the changes in their vote tallies over time. After the jurors informed the bailiff they were having difficulty reaching a verdict, the trial judge called them into the courtroom for consultation. The foreman reported that after extensive debate, "we are a divided jury." The court then inquired whether any juror believed that continued deliberation would be useful, and upon receiving no response in the affirmative the court, sua sponte, declared a mistrial.

Given the constitutional right of a defendant to have his trial proceed to verdict once a jury has been impaneled, "the power of the trial judge to interrupt the proceedings on his own . . . motion by

declaring a mistrial is subject to stringent limitations. . . . [R]etrial is permissible only if a manifest necessity existed for the declaration of the mistrial lest otherwise the end of public justice be defeated; the existence of 'manifest necessity' is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances. [Cits ]" *Jones v. State*, 232 Ga. 324, 326-327 (206 SE2d 481) (1974). "Where the jury is hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial." *Glass v. State*, 250 Ga. 736, 738 (2) (300 SE2d 812) (1983). " 'At what time and under what circumstances the court shall discharge the jury from the further consideration of a criminal case, is a question left [largely] to its own discretion.' " *Hyde v. State*, 196 Ga. 475, 478-479 (1) (26 SE2d 744) (1943).

After a careful review of the record, we cannot conclude that the grant of a mistrial in this case constituted an abuse of discretion. We do agree with appellant that the better practice is to consider carefully the factors listed in *Thornton v. State*, 145 Ga. App. 793, 795 (245 SE2d 22) (1978) before declaring a mistrial. However, we likewise recognize the reason for according great deference to a trial judge's decision to declare a mistrial when the jury is deadlocked: "[i]f retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock." *Arizona v. Washington*, 434 U. S. 497, 509-510 (98 SC 824, 54 LE2d 717) (1978). Considering the trial judge's knowledge of the evidence presented, the length of the jury's deliberations, and the foreman's statement concerning the jury's status, we hold the trial judge did not err by concluding the jury was hopelessly deadlocked. See *Glass*, supra; see also *Phillips v. State*, 238 Ga. 632, 633-634 (235 SE2d 12) (1977); *Orvis v. State*, 237 Ga. 6, 7-10 (2) (226 SE2d 570) (1976). Accordingly, we will consider appellant's enumerations of error concerning the second trial.

2. Appellant contends the trial court committed reversible error by communicating with the jury in the jury room outside the presence of him or his counsel. The transcript discloses that after the jury had deliberated almost nine hours over two days, the prosecutor learned that one of the jurors was a convicted felon whose rights had not been restored and thus was ineligible to serve on the jury. See Op. Atty. Gen. 83-33, p. 70 (1983). After announcing her intentions to counsel, the trial judge entered the jury room to instruct them to cease their

deliberations until further notice.[1] After extensive discussion between counsel and the court, the juror was removed from the panel and replaced by the alternate juror.

"The rule is well established in this state, that the defendant on trial must be present when the court takes any action materially affecting his case. [Cits.] This right is guaranteed to the accused by the fundamental law of this State, in order that he and his counsel may see to it that he has a fair and impartial trial and that nothing is done that would in any wise tend to his prejudice. Unquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused . . . and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial, and the accused would be entitled to another trial. [Cits.]" (Punctuation omitted.) *Collins v. State*, 191 Ga. App. 289, 290 (381 SE2d 430) (1989).

The trial court's action clearly went against the "better practice" of communicating only through the bailiff or in the presence of the accused and his counsel, for the matter at issue did "materially affect" appellant's case. See id. The question thus presented in this appeal is whether the judge's direction to the jury was impermissibly prejudicial to appellant. The communication clearly was not a charge or recharge, for it did not inform the jury of the law to be applied in the case. See *Stewart v. State*, 165 Ga. App. 428, 430 (300 SE2d 331) (1983); compare *Collins*, supra at 289-291 (3). Nor did the communication constitute a substantive colloquy or formal discourse, see *Stewart*, supra, or a review of the trial testimony. Compare *Watkins v. State*, 237 Ga. 678, 680-681 (229 SE2d 465) (1976). Although the topic under discussion between the court and counsel certainly was material to appellant's right to a fair trial, the jury was not informed of the substance of this discussion but was told only to cease deliberating until a problem could be resolved. The purpose of the court's actions was to ensure the integrity of the proceedings, and nothing was said to the jury that could have undermined the inherent fairness of the

---

[1] Contrary to the State's position, appellant preserved his right to raise this issue on appeal by contemporaneously objecting to the trial court's action. See *Seay v. State*, 111 Ga. App. 22, 25 (3) (140 SE2d 283) (1965); compare *Johnson v. State*, 254 Ga. 591, 596-597 (5) (331 SE2d 578) (1985).

trial or the rights of appellant. Under these circumstances, we are persuaded that the conversation was not prejudicial to appellant. See generally *Watkins,* supra at 681-682; *Stewart,* supra.

3. Appellant enumerates as error the trial court's refusal to allow him to question Illya Hurston, the assault victim and the State's key witness, concerning criminal charges pending against him. When the State presented Hurston's testimony, appellant made an offer of proof that the witness was under indictment for automobile theft and had been arrested on two counts of theft by receiving for which presentment was pending. Since the witness had testified that he had made no deals with the State, the trial court refused appellant's request, made pursuant to *Hines v. State,* 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982), to interrogate the witness concerning these pending charges and any possible desire of the witness to receive favorable treatment from the State.

A criminal defendant's right of confrontation includes the right to cross-examine a key State witness concerning pending criminal charges against the witness. Id. at 259. In addition to the general right to impeach the witness by proof of prior criminal convictions, the defendant is entitled to make "[a] more particular attack on the witness' credibility . . . by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness. . . . The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony. . . . [E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It is especially important in a case where a witness . . . may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness. *Whether or not such a deal existed is not crucial. What counts is whether the witness may be shading his testimony in an effort to please the prosecution.* A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." (Emphasis supplied; citations and punctuation omitted.) Id. at 260 (2).

While the trial court has discretion in determining the scope of cross-examination, the court's refusal to permit any inquiry into Hurston's pending criminal charges was an abuse of discretion and reversible error. Id.; see *Owens v. State,* 251 Ga. 313, 316-317 (1) (305 SE2d 102) (1983). Appellant clearly was entitled to question the witness concerning the pending charges and any possible desire on his part to influence their disposition by assisting the State in the presentation of the case against appellant. Contrary to the State's contention on appeal, the refusal to permit *any* such inquiry is not harmless error,

but "constitutional error of the first magnitude [that]· no amount of showing of want of prejudice would cure. . . . [Cit.]" (Punctuation omitted.) *Hamilton v. State*, 185 Ga. App. 536, 538 (1) (365 SE2d 120) (1988). Compare *Shaw v. State*, 201 Ga. App. 456 (411 SE2d 537) (1991) (refusal to permit defendant to question State's witness on certain details of her sentence not reversible error where court had allowed extensive questioning concerning pending prosecution and plea agreement deal made with prosecution). The case cited by the State, *Carmichael v. State*, 260 Ga. 792-793 (2) (a) (399 SE2d 918) (1991), is inapplicable because the witness in that case had already been convicted and sentenced, thereby rendering moot the inquiry at issue, and because the defendant, unlike appellant in the instant case, did not seek at trial to make the inquiry into possible motive recognized in *Hines*. Accordingly, we reverse the judgment of conviction.

4. Of appellant's remaining enumerations, we will address the ones that may occur upon retrial.

(a) Regardless of whether the State's direct evidence is again impeached upon retrial, because the State's case rests in part on circumstantial evidence appellant would be entitled to a charge on circumstantial evidence if he so requests. *Robinson v. State*, 261 Ga. 698, 699-700 (410 SE2d 116) (1991). We do not agree with the State's argument in its brief that *Robinson* overruled or superseded the principle, set forth in *Horne v. State*, 93 Ga. App. 345, 346 (4) (91 SE2d 824) (1956), that when the State's evidence is impeached the court must charge on circumstantial evidence even absent a request. Instead, we read *Robinson* to mean that a charge on circumstantial evidence is authorized *either* under the circumstances presented in *Horne or* if the direct evidence is not impeached but the defendant requests the charge.

(b) Although appellant was indicted for committing aggravated assault with a deadly weapon, the court instructed the jury that aggravated assault also could be committed when a defendant "assaults another person with intent to murder, rape, or rob." While the fact that the court instructed the jury on the specific charges set forth in the indictment probably avoided reversible error, see *Ross v. State*, 192 Ga. App. 65, 66 (2) (383 SE2d 627) (1989), upon retrial the charge should be limited to the manner alleged in the indictment. See *Owens v. State*, 173 Ga. App. 309, 312 (4) (326 SE2d 509) (1985).

*Judgment reversed. McMurray,.P. J., and Cooper, J., concur in the judgment only.*

DECIDED NOVEMBER 23, 1992 —<br>RECONSIDERATION DENIED DECEMBER 3, 1992

*Jeanne Canavan*, for appellant.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Kenneth D. Feldman, Assistant District Attorneys*, for appellee.